UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL BUSTOS-ALONSO, | No. 1:25-cv-01570-DJC-AC |
| Petitioner, | |
| v. | ORDER |
| CHRISTOPHER CHESTNUT, et al., | |
| Respondents. | |

Petitioner Rafael Bustos-Alonso is a non-citizen presently in the custody of the Department of Homeland Security. Petitioner has a pending application for a U Visa. Prior to filing the present Motion, Petitioner was informed that he would be removed from the United States imminently.[1] Petitioner has now filed the present Motion for Temporary Restraining Order seeking an order enjoining Respondents from removing Petitioner to Mexico. (*See* ECF No. 2.)

For the reasons stated below, Petitioner's Motion for Temporary Restraining Order is granted.

---

[1] On November 17, 2025, the Court issued an administrative stay of any efforts to remove Petitioner until it could decide this Motion. (ECF No. 5.) Respondents confirm that Petitioner has not been removed pursuant to that order.

## BACKGROUND

Petitioner and Respondents have provided an accounting of Petitioner's purported immigration history, most of which is undisputed. (*See* Mot. (ECF No. 4) at 1–3; *see also* Opp'n (ECF No. 6) at 4-5.) As Petitioner's argument rests on the effects of Petitioner's pending U Visa application and his deferred action status, only this portion of the factual history is relevant to this Order.

Petitioner states that he filed an application for a U Visa on August 21, 2023. (Mot. at 2; *See* Novis Decl. (ECF No. 1-2), Ex. 2.) On April 8, 2025, United States Citizenship and Immigration Service ("USCIS") sent Petitioner an I-797 Notice of Action Form with a header that stated, "Notice Type: Bona Fide Determination Notice." (Mot. at 2; Novis Decl., Ex. 5.) The Notice stated that "[a]t this time, the evidence demonstrates your petition for U nonimmigration status is bona fide, and you warrant a favorable exercise of discretion to receive employment authorization and deferred action." (Novis Decl., Ex. 5.) The Notice further informed petitioner that in order to receive employment authorization, he needed to submit an application using Form I-765, and that he would receive "separate correspondence regarding the adjudication of your Form I-765 once it is filed." (*Id.*) The Notice stated that "[Petitioner's] period of deferred action will begin on the date your employment authorization begins." (*Id.*) Petitioner filed an application using Form I-765 on August 14, 2025. (Mot. at 2.)

Briefing on this Motion is completed. (Mot.; Opp'n; Reply (ECF No. 7.) On November 21, 2025, the Court held oral argument on this Motion, at the conclusion of which this matter was submitted.

## LEGAL STANDARD

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially similar." *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain preliminary injunctive relief, Petitioner must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities

tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). The final two factors "merge when the Government is the opposing party." *Nken v. Holder,* 556 U.S. 418, 435 (2009). The Ninth Circuit also employs the "serious questions" test, which states "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

## DISCUSSION

### I. *Winter* Factors

#### A. Serious Questions Going to the Merits

The Court finds there are serious questions going to the merits. At the core of his petition, Petitioner contends he should not be subject to removal as he is entitled to deferred action. Deferred action is "a form of prosecutorial discretion whereby the Department of Homeland Security declines to pursue the removal of a person unlawfully present in the United States." *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 967 (9th Cir. 2017); *see De Sousa v. Dir. of USCIS*, 755 F. Supp. 3d 1266, 1270 (N.D. Cal. 2024) ("'Deferred action' refers to an 'exercise in administrative discretion' under which 'no action will thereafter be taken to proceed' with the applicant's removal from the United States." (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1999)); *see also Sepulveda Ayala v. Bondi*, --- F. Supp. 3d ----, 2025 WL 2084400, at *7 (collecting "Ninth Circuit opinions confirm[ing] that deferred action prevents recipients' removal from the United States.") (W.D. Wash. July 24, 2025). Thus, if Petitioner is entitled to deferred action, he should not be removed to Mexico.

In Petitioner's Motion, Petitioner argued that the April 8, 2025, I-797 Notice of Action Form granted him a Bona Fide Determination, which necessarily conferred deferred action. (Mot. at 1.) It is unclear what the exact legal effect of that Notice was.

On one hand, the Notice states that Petitioner "warrant[s] a favorable exercise of discretion to receive employment authorization and deferred action." (Novis Decl., Ex. 5.) On the other hand, the Notice states that Petitioner needs to first submit an application and obtain an Employment Authorization Document before he is entitled to deferred action. (*Id.*) From these statements, it is unclear if Petitioner had actually received a Bona Fide Determination or would receive that determination after he received an Employment Authorization Document. However, this point is ultimately irrelevant.

In Opposing Petitioner's Motion, Respondents filed a declaration from Deportation Officer Marbella Pano. (Pano Decl. (ECF No. 6-1).) In that declaration, Pano states that "[o]n or around September 26, 2025, USCIS revoked the bona fide determination and placed Petitioner's case on a waiting list."[2] (*Id.* ¶ 23.) The revocation of any Bona Fide Determination previously granted to Petitioner may have ended any deferred action status conferred on Petitioner by virtue of the Bona Fide Determination. However, it appears that placement on the waiting list for a U Visa itself grants Petitioner deferred action. Pursuant to 8 C.F.R. § 214.14(d)(2), which addresses petitioners for U Visa who are placed on the waiting list, "USCIS will grant deferred action or parole to U–1 petitioners and qualifying family members while the U–1 petitioners are on the waiting list." This is further confirmed by USCIS's Policy Manual, which states that "[p]rincipal petitioners placed on the waiting list are eligible for employment authorization <u>and receive a grant of deferred action</u> or, in limited circumstances, parole." USCIS Policy Manual Vol. 3, Part C, Ch. 6 (emphasis added);[3] *see Velarde-Flores v. Whitaker*, 750 Fed. Appx. 606, 607 (9th Cir. 2019) ("[P]lacement on a waitlist for a U-visa can entitle an applicant to deferred action[.]")

---

[2] Officer Pano's statement that "USCIS revoked the bona fide determination" (Pano Decl. ¶ 23), is further evidence that the April 8, 2025 Notice granted Petitioner a Bona Fide Determination.

[3] A current version of the USCIS Policy Manual can be found at https://www.uscis.gov/policy-manual/. A permanent version of Volume 3, Part C, Chapter 6 of the USCIS Policy Manual, as it exists at the time of this Order, can be found at https://perma.cc/JQ36-Q6JF.

At oral argument, the Court asked Counsel for the Government what Officer Pano was referring to when she stated that Petitioner was placed on "a waiting list" and whether it referred to the U Visa waiting list or some other list. Counsel for the Government stated it was unaware of any other list than the U Visa waiting list. Based on the statement in Officer Pano's declaration and the representations of the Government's Counsel, it appears that while Petitioner's Bona Fide Determination may have been revoked, and he is now placed on the waiting list for a U Visa. Under the regulations, this grants Petitioner deferred action. *See* 8 C.F.R. § 214.14(d)(2). As such, Petitioner is not subject to removal as he is presently entitled to deferred action.

Petitioner's apparent entitlement to deferred action by virtue of his placement on the waiting list is sufficient to raise serious questions going to the merits. If Petitioner is removed to Mexico, the government's decision to remove Petitioner would likely violate federal regulations due to his deferred action status. At oral argument, the Government's Counsel argued that removal is appropriate regardless of Petitioner's deferred action status, as a final removal order has been issued. However, Respondents do not cite authority to that end. In fact, other courts have expressly found that deferred action prevents removal from the United States. *See Sepulveda Ayala*, 2025 WL 2084400, at *7. Petitioner's deferred action status is sufficient to raise serious questions going to the merits and, given the balance of equities discussed below, grant Petitioner's Motion for Temporary Restraining Order.

**B. Irreparable Harm**

The irreparable harm to Petitioner if a Temporary Restraining Order is not granted is readily apparent. Petitioner first entered the United States at one year old and has largely been residing in the United States ever since. (Mot. at 1; Opp'n at 2–3.) If Petitioner is wrongfully removed, he will be separated from his home and family and sent to a country where he has not lived for the vast majority of his life. He also claims that he would face potential danger in returning to Mexico due to the fact that "[Petitioner's] father was a federal police officer in Mexico and the cartels attempted to

5

forcibly recruit him." (Mot. at 6.) The Court finds that Petitioner has established that irreparable harm will occur if the Court does not grant his request for a temporary restraining order.

### C. Balance of Equities and Public Interest

The final two *Winter* factors merge when the government is the non-moving party. *Baird*, 81 F.4th at 1040. The Court finds that the balance of equities and public interest weighs in Petitioner's favor. "The public has a vested interest in a federal government that follows its own regulations." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025). Here, based on the facts and information present before the Court, Petitioner appears to be entitled to deferred action under federal regulations and USCIS policy. The equities and public interest clearly weigh in Petitioner's favor where the Government seeks to take actions that violate its own regulations.

Petitioner has thus established the existence of serious questions going to the merits, that he will suffer irreparable harm if preliminary injunctive relief is not awarded, and the balance of equities and public interest tips clearly in Petitioner's favor. As such, preliminary injunctive relief is warranted here. *See All. for Wild Rockies*, 632 F.3d at 1135.

## II. Jurisdiction

Respondents also argue that the Court lacks jurisdiction over this action due to the limitation imposed by 8 U.S.C. § 1252(g). Section 1252(g) limits the Court's jurisdiction to "hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." The jurisdictional limits created by section 1252(g) do not apply here.

"The Supreme Court has interpreted Section 1252(g)'s jurisdiction-stripping provisions narrowly[.]" *See Sepulveda Ayala*, 2025 WL 2084400, at *3 (citing *Am.-Arab Anti-Discrimination Comm.*, 525 U.S. at 482). Under this narrow reading, section 1252(g) applies "only to three discrete actions that the Attorney General may take: her

'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Am.-Arab Anti-Discrimination Comm.*, 525 U.S. at 482 (emphasis in original). Notably, the Supreme Court has recognized that "[s]ection 1252(g) seems clearly designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations." *Id.* at 485. As stated by the Ninth Circuit, "[w]here the Attorney General totally lacks the discretion to effectuate a removal order, § 1252(g) is simply not implicated." *Arce v. United States*, 899 F.3d 796, 801 (9th Cir. 2018).

This principle has been applied by other district courts to find that section 1252(g) did not strip them of jurisdiction in similar circumstances. For example, in *Sepulveda Ayala*, Immigration and Customs Enforcement sought to remove petitioner Arturo Sepulveda Ayala, a U visa applicant, from the United States using a twenty-one-year-old removal order, despite the fact that the petitioner had previously been granted deferred action. 2025 WL 2084400, at *1–2. The district court rejected the Government's argument that the court lacked jurisdiction to hear the case because the case concerned the execution of a removal order. Instead, the district court found that the petitioner's claims did not "arise from" the decision to execute the removal order but "from the Government's decision to grant him deferred action combined with ICE's subsequent refusal to honor that grant." *Id.* at *4. The court further stated:

> No matter how the Government characterizes Sepulveda Ayala's claims, they arise from the Government's decision to grant deferred action and then ignore that grant, not from any discretionary choice about execution of a removal order. Section 1252(g) simply does not reach claims challenging the government's failure to honor benefits it has already granted.

*Id.*

////

////

////

7

This same reasoning applies here. Petitioner's initial contention was that, by virtue of his alleged Bona Fide Determination, he was entitled to deferred action, which would be violated if he were removed from the United States. While the facts have developed since Petitioner's Motion was initially filed, the core of Petitioner's claim remains the same: he is entitled to deferred action (now as a result of his placement on the waitlist), and Petitioner challenges the Government's failure to honor the benefit that it granted Petitioner. Thus, section 1252(g) does not deny this Court subject matter jurisdiction over this action.

**III. Bond**

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court has "discretion as to the amount of security required, if any," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (citation modified). The Court finds that no bond is required because Respondents face no realistic likelihood of harm from enjoining their conduct. *Id.*

**CONCLUSION**

In accordance with the above, the Court ORDERS that:

1. Petitioner's Motion for Temporary Restraining Order (ECF No. 2) is GRANTED;
2. Respondents and all their officers, agents, servants, employees, attorneys, and persons acting on their behalf in concert or in participation with them are immediately enjoined from removing or deporting Petitioner Rafael Bustos-Alonso from the United States; and

3. Respondents are ORDERED TO SHOW CAUSE on or before December 1, 2025, as to why this Court should not issue a preliminary injunction on the same terms as this Order.  December 3, 2025, Petitioner may file a further Reply.  The matter is not set for a hearing, though the Court may set one should it later be determined that a hearing is necessary.

IT IS SO ORDERED.

Dated: **November 21, 2025**

*Daniel J. Calabretta*
Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE